Good morning, Your Honor. Robert Vanna on behalf of Christine Keys. This is the case of a missing automobile. That sort of stuff unfortunately happens a lot in civil litigation. Evidence gets lost, both from the defense and the plaintiff. But this case is a case involving a motor vehicle accident. Not that serious from the collision standpoint. But Ms. Keys' allegations are that the airbags did not deploy until the paramedics showed up. And that when the paramedics opened the door, the airbags deployed. There's some disagreement on that. But I think we're familiar with the facts. You agree that the standard review here is merely abuse of discretion? I totally agree. So let me just talk about the bottom line is what happened to the attorney. It's always the attorney doesn't show up to have made the mistake. And that wasn't me. It was another attorney. Mr. Horton, another law firm. But in any event, Mr. Horton felt that the case had a, you know, some value as a products liability case against Hyundai based on what the client had told him had happened. And, of course, if that had happened, it would be a prima facie case. And, you know, that's so what Mr. Horton did is it wasn't my client's car. It was her daughter-in-law's car. So she didn't own it. And the car was, I guess, totaled. And Mr. Horton decided to purchase the salvage value of the car and wrote a letter to this place called Accident Solutions, ironically. And he wrote the letter and said, hey, don't destroy the car. This may be a big piece of evidence. A record in evidence? Yes, it is. Where? The letter. That letter is in evidence? I believe so. It's in the record on appeal. When was that letter actually written? It was written my recollection was written shortly after the car was purchased. But there's nothing in the record about any agreement on the part of the Accident Solutions to store the car? That's correct. Or about how much fees they were due? I'm sure Nevada, like most states, have laws about, you know, when a car is deemed abandoned and stuff like that. Yeah, Mr. Horton and I wrote them a letter and said, quoting him, it's like this would be a violation of Nevada law. Actually, I don't know what violation. It may be. Nevada law, please don't destroy the car. A violation by him. Well, I mean, saying that Accident Solutions would violate it. There's nothing in the record that he paid any fees. I'm sure it wasn't free. No, that's absolutely true. There's nothing indicated. And we don't know what the agreement was. There was no agreement. And it's his burden to, you know, show what the agreement was? Well, there was no agreement. There was no agreement. You concede that? I concede that he wrote a letter. There was no agreement, then. What's the duty of Accident Solutions? I'm not – we're not suing them or anything. I think unilaterally he said to Accident Solutions, please don't destroy the car. There was no – Well, he's trying to put the blame on them because he wrote the letter. Well, he wrote the letter. What's their duty? In light of receiving that letter, assuming they got no fees, what's their duty to preserve the car? I don't know if they have any duty to that. Right. So then in that situation, what is Mr. Horton's duty, since he's the owner of the car now? Well, in retrospect, it would have been better had Mr. Horton – No, what's better? What's his duty, his legal obligation? He's the owner of the car. He makes a claim, you know, involving the condition of the car, and he knows it has to be preserved. What's his duty? I believe his duty was to enter into some arrangement to make certain that it would be preserved. And there's no – nothing in the record that he did that? No, there's nothing in the record that he did that. And doesn't he lose? Well, I don't – well, it's not him. It's Ms. Keyes, of course, and the question is – Well, he's her lawyer. He is. In Nevada, like every other state in federal court. No, she's – The lawyer acts as the agent for the client. That's – And the client is bound by the lawyer's actions, right? That's exactly right. Well, so you can't say it was not her, it was him. Can you? No, I'm not saying it was him. This is a matter of preserving evidence. I'm not suggesting what he did was the best idea. I would think that he – Maybe it was the worst. Well, he used some bad judgment, probably. But shouldn't he bear the risk, then, at that point? If he uses bad judgment, shouldn't he be responsible for the spoilation of the evidence such that the district court acted within its discretion in dismissing the case? I don't – I believe that the district court did exceed the discretion. Why? And that's what I want to get to, why is that. Because, well, the Ninth Circuit cases that are in line here, you know, the Leon case and Hauser-Busch, talk about overall is that in order to dismiss the case, there should be either bad faith, which the court found there was no bad faith, or there should be intentional, and the court found it was an intentional destruction, or – But what the judge did there was use Nevada law to start out and then use the federal law. Yeah, that was – Was it brought to his attention by either side? Yeah. Actually, it all started out with state law, and I think all the parties – it looks to me like I wasn't involved at that point in doing the briefing. But the – looks like they all assumed that state law would apply. And under state law, Bass – Well, it was a mixture from the very beginning. It was. And it was never very well ferreted out. And then even on the brief up here to the court, it started out arguing state law and then federal law both. So what should this court do? Send it back to see if it can be straightened out? Well, yeah. Here's what I believe. One is, when it was reconsidered, the court didn't say, look, I didn't find it was willful. And I don't think there's any evidence. And I think everybody can see that it wasn't a willful destruction. But isn't fault also a component? Yes. Find it a willfulness, fault, or bad faith? No bad faith, no willfulness. How about fault? All right. Let's go. That's what this case is about, is whether or not there's fault. And then what is fault? And as one of the courts said, one of the other circuits said, a blunder or certain level of lack of judgment doesn't equate to fault. What does the Ninth Circuit say? It doesn't define it that I can see. But another circuit defines it as, look, it doesn't mean every time you make a mistake that's fault. When it comes to dismissing the case, I mean, fault generically means a lot of different things. And certainly I would concede there's a lack of judgment here in following up and making certain that there was a clear understanding. Is lack of judgment a euphemism for fault? Well, it depends on how you define fault. Remember that the other circuit court said a blunder is not necessary to the level of fault for dismissing a case. The problem is that this is the pivotal evidence in the case, and it would be difficult for Hyundai to defend without being able to inspect the vehicle. That's the problem. That is the big problem. I mean, if there was something like a video or something, we might be. Right. Well, is it really as big a problem as it's being made out to be? Because they did look at it, and while the charge has not been made with regard to the other part of the matter, they looked at the seat belt as well. They indicated that it was not in place. And I was going to go there. That's my next. I wanted to talk about standards. But, yes, as a matter of fact, if you look at all the cases that have been dismissed, I could find and look at, the defendant was never given an opportunity to inspect. In this case, in spite of Mr. Horton's lack of judgment and making certain, more certain that this would not be destroyed, he immediately contacted Hyundai, made them aware of the claim that was going to be made, and gave them. And that claim that was to be made only had to do with the airbag. That's exactly correct. And I can see that. So Hyundai did have their experts go out and met with Mr. Horton's expert. They had unfettered access to the car. They were able to go to what they call the monitor that, you know, records what happens at the time of the accident. They downloaded the material from that. They got all that material. And they had a full right to inspection. Nobody disputes the airbags eventually went off. It's really a timing. Did it go off in time to prevent the injury? Well, what about the seatbelts? That's not the issue. I was going to get to that next. The difficulty is that the plaintiff's expert had the opportunity to examine the vehicle regarding the seatbelts. And Hyundai's expert did not have that same opportunity. I think they inspected before the complaint was filed, right? Yes, but they had the opportunity. They had full opportunity to inspect the vehicle completely. Hyundai did. Now, what happened is Mr. Horton wrote a letter saying we believe that the product claim is going to be based upon the airbags. It doesn't mention the seatbelts, so I can see. So then the Hyundai people went out there with Mr. Morrison, who's a local guy that's not really a seatbelt expert. He's an engineer, but not a specialized engineer. Hyundai sent their expert out. Anyway, they had complete access, unfettered access. What do you mean unfettered? Were they able to just go to Accident Solutions and say, we want to look at that vehicle without being accompanied by the owner? Well, they were accompanied by our expert. Right. All right. You're talking about in the initial inspection. Right. But I'm talking about after the ---- There was no inspection afterwards by Hyundai. Right. That's the point. Well, look, the whole problem comes about because after Hyundai's inspection, the plaintiff, you know, changed the grounds of her claim, right? I was going to get to that. They brought a new claim, and before an inspection could be made by the defendant of the new claim, the car was destroyed. I was going to ---- Well, is your point that even though they weren't looking specifically at seatbelts as well as airbags, they certainly had the opportunity to do so, and the computer readouts talked about the seatbelts? Right. The computer printout pointed out that the seatbelt was not engaged at the time of the collision. But they didn't go into why it was not engaged. That's right. And so what happened following up is that after the initial inspection, Mr. Morrison said to Mr. Horton, you know, you need to get somebody that's more experienced than me in these type of car failures. So he sent a new expert out that came back and said, you know what, I understand the airbag situation, but by the way, it was a by the way when I looked at the seatbelt, you know, the webbing or this or that was different than what I would expect. Why wasn't the Hyundai investigator or expert invited along to that second inspection? I don't know. I mean, he could have been, but he didn't. Was there a second inspection? There was a second inspection by the new expert. For the plaintiff. And he suggested to Horton that he was marking up the wrong tree, huh? No.  No, he's not saying that the airbags fail, but he's also saying you need to include the seatbelt. So then Mr. Horton amended the complaint. It was filed in the state court. He amended the complaint to add the seatbelt. And then after the complaint was filed, not long after. About a month or so after. Yeah, yeah. That's the irony of it all, of course. It's the sad part. Hyundai contacted Mr. Horton and said, okay, look, we want to go out and reinspect the there is no car. It's now part of another car, I guess, whatever they do, those things. A great junk pile in the sky. It's gone. So that's what happened. So the question is, before the court, it comes down to this. And I do recognize, I do concede that this piece of material, the car, the product itself, of all things to lose, is the worst thing you can lose in a product's case. I mean, it certainly wasn't intentional, because no matter what happened, if you were to find that the sanction was too severe and sent it back with an adverse presumption type of thing. That wouldn't help, because then you still would have the plaintiff's expert report to overcome the adverse inference. What about if the case were sent back just to be tried on the basis of the first inspections? That's exactly what, that's where it's going to go. If I were deciding the case, which I'm not, but if I were, I would say, well, look, you know what, you're not going to be able to talk about the seatbelt, because you didn't put them on notice of it. But that being said, they were on notice of the airbag problem. They went out there, and they did have unfettered access. Nobody said, do anything you want to do. Do what you want to do. Our expert's watching. We're all, you're all there together. Do anything you want to do. But what I would suggest is that we not be allowed to argue anything about the seatbelt, whether that's defective or not defective, but simply argue. And the only way you can do that is to have an open complaint.  That's what we're going to do. And the part of the complaint would be dismissed and you would just handle the seatbelt. I mean, the airbag. The airbag. And be limited. And, by the way, we are going to be severely hampered if we went back because the jury is going to know that the car was destroyed and we don't have it there, and it is a problem. But there was the opportunity to look at the airbags by both sides. Yeah, both sides had unfettered opportunity to look at the airbags, how they looked, what do they want to do with the airbags. And their argument, and I understand their argument, is, well, you know, you didn't mention the seatbelts and we might have spent more time on the seatbelts. So my suggestion is that it goes back on what happened on the first inspection with no allegation of the seatbelts being defective. All right. Thank you, counsel. Thank you. We'll give you a minute for rebuttal after we hear from opposing counsel. Good morning, Your Honors. Gene Scherr on behalf of Hyundai. What's perhaps most striking to me about the briefing and the argument in this case is that nowhere in their briefs or in the argument today do counsel for Ms. Keys even acknowledge the importance, as a matter of sound judicial administration, of ensuring that the district courts have adequate tools to enforce the well-established duty of a litigant who has control over evidence to ensure the preservation of that evidence. What does that have to do with the airbags? What does that have to do with the airbags? Why don't we do exactly what's been suggested here, that there's a dismissal of the second complaint, as it were, and only deal with airbags? And both sides having had an opportunity to examine. There are a couple of problems with that, Your Honor. First of all, it's not true that Hyundai had an expert witness examine the airbags. Hyundai simply had one of its employees who goes out to accident sites and takes photos and that sort of thing. Isn't that the fault of Hyundai? Why didn't Hyundai see? I mean, if Hyundai knew that the complaint was regarding the airbags and there was a considerable period of time within which Hyundai could inspect the car, then why isn't that Hyundai's problem? There was no lawsuit yet, Your Honor. The lawsuit wasn't filed until they went out just when they received the lawyer's letter.  That's right. They got essentially a claim letter, and both people sent representatives out to look at the car. And then there was no lawsuit filed for at least a year. It was about 15 months. Did that employee of Hyundai then write a report or a memo? I believe he probably would have written some kind of a memo about it. Have you seen it? I have not seen it. So you don't know what's in it? No, I don't. And he would not have been a testifying expert. And it wouldn't make sense for Hyundai to spend the money to go out and hire a true testifying expert in a case where there's not even a complaint yet. Well, apparently the plaintiff didn't have a testifying expert at that stage either. Oh, he did. No, he said he just was a local engineer, and he came back and said, well, I think you ought to hire somebody with more expertise. It's true that they added additional experts, and those experts were able to look at the car. So what about his suggestion that, well, you bar the second expert and you just go back to the first complaint? Well, there are two problems with that. The first problem is that there was a finding, a factual finding, by the district court, that no lesser sanction would cure the prejudice that Hyundai had suffered. But the court was thinking about the second complaint at that point. If we went back to the first complaint, why wouldn't it be equitable? You'd be on a different playing field, wouldn't you? No, we wouldn't, because, well, because the other side has arguments. I mean, in a product liability case, in my experience, there's a great tendency on the part of juries to apply kind of a res ipsa approach. If there's a, you know, if there's something that's arguably wrong with the car and somebody was injured, juries tend to believe the plaintiff rather than the defendant. But you have your person who got the data from the black box, and the engineer who was not an expert examined the car. So why isn't that evidence that the jury can weigh rather than just having a res ipsa? Well, they could. But the problem is, Your Honor, they have a plaintiff who is willing to say, implausible, though it may seem to people who are familiar with airbags, that they have a plaintiff who is willing to say that this airbag didn't go off until she was being taken out of the car by the paramedics. She claims that all of a sudden, as she was being removed from the car, the airbag went poof. And that's why the airbag was discharged when the vehicle was inspected. And the only thing that your person who went out and looked at it can say is that it went off, but didn't tell when it went off. That's correct. In fact, I believe the way the computer works is that all the computer records is that there was a signal sent to the airbag to go off. The computer doesn't come back. In other words, then, you see, preserving the car is not going to go after that kind of evidence. That's right. No, no. If the car were preserved, yes, they could. If the car were preserved, there are lots and lots of things that a good expert could do. So that the airbag went off earlier?  Like what? Well, for example, in a case like this, an expert will typically take the airbag and look at it under a blacklight. And by doing that, a good expert can identify exactly where, and with a proper accident reconstruction, can determine exactly when in the sequence of the accident the person's body actually came into contact with the airbag. And if it's your expert, it's going to show that it went off when it should have gone off. And if it's the other side's expert, it'll show that it went off afterwards. Right. And then it's a question of who the jury believes. But at this point, where you have a plaintiff who's willing to say it didn't go off until after the accident, the only way to respond to that is to say... You're going to have that anyway. All right. Suppose you also had an instruction that's saying, that said, you know, defendant has the opportunity to instruct the car, I mean inspect the car, and if it did, you know, one of the things that might have been shown is this blacklight examination. Well, there's... That would be equivalent to having the expert before the jury, right? I'm sure there are a number of things that a trial court could do to reduce the pressure. Right. And it doesn't seem like the trial court considered those things. I'm sorry? It doesn't seem like the trial court considered those things. Well, and that's correct. And there's a reason for that, which gets to the second point, which is that this issue has been waived. The only the only sanction short of dismissal that the plaintiff's side proposed was an adverse instruction, an adverse inference instruction to the jury. They didn't propose this idea of limiting the case to the opinions and evidence that was developed in the initial inspection until their rehearing petition. And the district court correctly recognized that that suggestion was untimely and did not expressly address it, although he reaffirmed his earlier finding that there was no sanction short of dismissal that would have fully resolved the prejudice. If it were the Responders' question as to whether or not the airbag went off when the plaintiff was removed, if her testimony is that it didn't go off until she was removed from the car, wouldn't you be able to ascertain that from the Responders? No. Why not? Because, as I understand it, all the computer does is signal those. No, no, no. The human Responders. The human Responders.  The emergency personnel who came in. And if she said the airbag didn't go off until they took me out of the car, they would have been able to observe that one way or the other. So were they deposed? They were interviewed. I know the case didn't even get far enough that there was. Were they interviewed to determine whether or not they confirmed that? They were interviewed. And my understanding is that all they could say was that they didn't recall the airbag going off while they were there. But this is a classic situation. They didn't recall whether the airbag was already deployed as they opened the door to get her out? They didn't recall it deploying while they were there. So that refutes her testimony. It would help. There's no question about that. But, again, the question as to prejudice is not whether the defendant would be left completely defenseless, right? This Court's decision is a defenseless case. And so the question is whether or not the defendant can adequately defend against the claim. That's what the balance is. But, Your Honor, with all respect, that's not the test for prejudice. The test for prejudice from Anheuser-Busch and Leon and other decisions of this Court is whether the absence of the evidence threatens to produce a different outcome in the case. It's just a threat. It's a different way of saying the same thing. But the other aspect of this equation is that, you know, there was no finding in this case of willfulness or bad faith, which I think was true in Anheuser-Busch and Leon. And so the most, I think, you're going to get is some kind of fault by the plaintiff. And so it seems to me that lesser degree of fault should require consideration of some lesser sanction than complete dismissal. I mean, that's one thing to be taken into account. Well, the district court did consider a lesser sanction, which was the adverse inference instruction. But the district court isn't limited to the suggestions from the parties in making this determination. The district court is to consider lesser sanctions globally. When you're considering the extreme sanction of dismissing a case, the district court has an obligation, in my view, to consider lesser sanctions globally rather than just those that are suggested by the parties. It just seems to me that this is a matter that really could be handled with the appellate mediation process. That's a good idea. Well, and we would be happy to accept a dismissal. I'm sure you would. But are you amenable to the mediation process? We have excellent mediators here in the circuit, and perhaps the mediators could help the parties move closer to resolving this without us having to untangle this very difficult issue, which I'm sure neither party would like. I believe that we attempted mediation. Oh, you did?  I believe that that was done. It appears that, indeed, the other side doesn't care to follow up on the seatbelt part of this. Well, and that, again, is new this morning, Your Honor. That's also not something new. But with that in mind, wouldn't it make sense then to try a different mediator here at the appellate level? Well, Your Honor, a trial is going to be expensive for everybody concerned, obviously. Exactly. So that's why it seems to me, again, it would make some sense with this new information that you want to proceed before an appellate mediator. Well, Your Honor, standing here today, this is not something that I've had an opportunity to discuss with my client. So I would suggest that we proceed on the assumption that there wouldn't be a mediation. But I'm happy to take that suggestion back if the Court asks me to do that. But, again. I mean, either you're amenable to a mediation. If you want us to decide the case, we'll decide it. Right. You may not like the decision, but we'll decide it. So if you want to proceed on that premise, go ahead with your argument. Okay. Well, again, to address the question of fault, there was a question raised earlier as to whether the district court actually made a finding of fault. It is true that the Court did not actually say, you know, I find that there was fault rather than willfulness or bad faith. But I think that ---- It didn't make any finding as to any of the three. I think a finding of fault can fairly be inferred from the district court's decision. First of all ---- Because of the sanctions? I'm sorry? Because of the sanctions? Well, that's one thing, but not only that. First of all, the Court cited this decision. This Court's decisions in Anheuser-Busch and Leon, it clearly applied Ninth Circuit law. It clearly understood that Ninth Circuit law applied, regardless of how the case was argued before the Court, which ---- and those decisions obviously cite the willfulness, bad faith and fault standard. That doesn't mean that the Court made a finding of that just because the Court cited the case. I understand. That's just one data point from which I think it can be fairly inferred that the Court did make such a finding. Which finding did it make? It mentioned those three things. Well, the Court made an express finding that the plaintiff had a duty to preserve the vehicle and had failed in that duty. I mean, that's a bad faith because of fault or what? Well, that's classic negligence language, I think, to say that somebody had a duty and failed in that duty. And then if you look on page ---- Does that equate to willfulness, bad faith or fault? That goes to fault. And if you look at page 6 of the Court's opinion, the Court actually talks about negligence. He talks about how the plaintiff claims that it was the garage that was negligent, and then he goes on to analyze that issue and essentially concludes that it was the negligence of the plaintiff, not the negligence of the garage, that resulted in the problem. And on the fault point, it's significant here, as the Court's questions point out, that the plaintiff hasn't claimed that there were any payments ever made to the storage facility, that the destruction resulted from any inability on her part to preserve the car. And again, we have a finding by the district court that the vehicle was the single  And beyond the prejudice that we think supports the district court's decision, the soundness of his conclusion on the fault issue is confirmed by four events. And if I can have 30 seconds, I'd like to quickly list those. Is that all right? 30 seconds. Okay. The first was the filing of her complaint on April 25th, which should have led a reasonable person to say, gee, what about this car? I better be sure that this car is preserved. Next was May 16th, when the complaint was amended to add a new seat belt claim. The next event, I'm sorry, I've got them out of order, but on May 8th, the plaintiff's own expert, after examining the car, told the plaintiff's counsel, you better preserve this car, because I'm going to need to do more analysis. That would have put a reasonable person on notice that he needed to check on the car. And finally, on June 16th, just a month before the car was destroyed, Hyundai filed its answer and made clear to everybody concerned that there was a dispute on key facts. That, too, should have put Let me ask you a question. Is it your representation to the court that it is the practice of Hyundai not to inspect vehicles for which there is a claim until there has been a complaint filed? Is that the regular practice of Hyundai? No, Your Honor. Hyundai did, in fact, inspect the vehicle. What it did not do is go to the expense of hiring a professional expert witness who could So no expert would be retained to inspect the vehicle until there is a complaint filed? That's my understanding of the typical practice. Well, you know, there's still nothing in the record that indicates whether the judge was finding bad faith or a fault. In the district court's reconsideration order, it concluded that it wasn't willful. Correct. But it certainly didn't reach either of the other two possibilities. Well, the court did talk about negligence earlier in that opinion. One of the problems also with this case, you know, is I myself am not sure whether negligence is enough to equal fault in terms of these kinds of spoliation sanctions. We don't have a definition of fault, right, in this context. I think the court does, at least implicitly. The Henry case, which we discussed in our briefs, imposes sanctions or affirms a sanctions award based on what the court found to be unreasonable conduct, not requiring bad faith or willfulness. And the Seventh Circuit in the Morocco decision and other cases have made very clear that fault can be based on negligence. In that case, it was gross negligence. So perhaps it might be helpful for us to define what fault means in this context and then send the case back to the district court to apply that definition with explicit findings as to the conduct that constituted fault. Well, I think if the court defined fault in the way that it's been defined implicitly in Henry and explicitly by the Seventh Circuit, there would be no conclusion other than there was fault here, because there was clearly negligence, and I would say it rises to the level of gross negligence. But you really would have to turn on the factual record, and there just isn't enough here for you to be sure that that wouldn't occur. Well, the district court did make factual findings on the underlying issues that, as I understand the argument, haven't even been seriously challenged as clearly All right. Thank you, counsel. Thank you. One minute for rebuttal, please. So just for the record, Mr. Vanna, is your client amenable to mediation? I don't have to talk to her, yes. Okay. Yes, absolutely. And I don't remember there being a mediation, a meaningful mediation. We are very willing to go through mediation. So you don't remember there being a mediation at the appellate level? I don't recall that happening, but I've had it. Or at any level. I don't recall that happening at any level. But I certainly would, and under the circumstances where we find ourselves, we would probably be pretty reasonable. We would certainly take all of this into account, because regardless if the case goes back, the destruction of the automobile does prejudice us substantially. And, by the way, on the fault, there is a certain case, and I was trying to find it there, but it says that fault should be not a blunder by the plaintiff's counsel, a blunder by the plaintiff's counsel, and or. In other words, it was looking for something substantial. And all the cases that they cited, and Bill and I replied briefly, pointed that out, are talking about primarily intentional egregious conduct. I mean, really egregious, where people intentionally destroy computers, they destroy this, they destroy that. A lot of the cases they've cited were about where they don't show up at depositions for many times, they evade questions. Whatever happened here, it was the judge actually reached, as you stated, in a reconsideration. He said, look, I'm not saying this is willful. What the judge basically said, as I read it, is, look, this was a big piece of material that got destroyed, and this is a – and I can't dispute that. This was a major piece of evidence. And it was almost a strict liability, like, well, it's a major piece of evidence regardless of whatever. How it got destroyed, it's major, so I'm not letting the case go forward. Well, there was a little more than that. There was the fact that there was no agreement with accident solutions to maintain the car. Well, I recognize we have problems. But what I'm saying, the judge really did not – he didn't really, quote, unquote, find so much fault. He said regardless – what he said was regardless of how it happened, it's a major piece of evidence that's lost. Well, you made a motion for reconsideration that was based on Rule 59e or 60b. Is that right? It was, yes. And that was filed after notice of appeal for final judgment had already been filed. Is that right? That's my understanding. So we can't consider that, then, can we? I think the appeal was filed to be, you know, in order – I think there was some These issues were raised for the first time in the prejudgment motion, and unless we determine that this is an exceptional case where we have to preserve the integrity of justice, we shouldn't be considering it. Well, forget the motion to reconsider. It was all – you know, as the judge said, there's nothing new anyway in the motion to reconsider. As he said, I don't have anything new anyway, so why did you bring it? But the whole – But do you take issue with opposing counsel's argument that the judge implicitly found fault? I do. My reading of the order was not that he found fault. It's faults defined by the other circuit, meaning more than a mere blunder or lack of good judgment. Something that has to be pretty severe in the way of fault. In other words, more than just a blunder. In fact, they use the word – it's more than a blunder by plaintiff's counsel, more than lack of judgment. It has to be something that rises to some level of egregiousness. Part of the difficulty is we haven't defined fault, actually, in our cases. All right. We just called it fault, and the judge did explicitly – there's no question there's no intentional conduct or bad faith here. I mean, it was an effort to get it. Well, your opponent was talking about negligence. Do you think negligence is sufficient as a standard of fault in these cases? I don't. I think fault rises above negligence and below intentional. I think it's in the defendant. Those cases are easy where you have the bad faith. This is a difficult one because it's kind of in the shadows. Well, bad faith usually is implied, you know, breach of implied duty of good faith and fair dealing, and I don't see that. In other words, no – if Hynda had ever called and said, hey, we want to see it again before the lawsuit was filed, when they called and said they wanted to see it again, it was a surprise that the car was gone. Right. Maybe it shouldn't have been a surprise, but it was a surprise. There was no reason to call before a complaint to say we want to see it again. Well, I guess, I mean, Mr. Wharton made it pretty clear he was going to file the complaint and make a claim, and so, I mean, it could have said, hey, the person we sent out, we want to send someone else. Nobody – if they had done that and we said no and then destroyed the car, I wouldn't be here discussing that. Yeah, but Hynda's position is, you know, they don't go to the expense of hiring an expert until there's a complaint, which is a reasonable procedure. No, I understand. I understand her position, and they're saying that – but bottom line is that this guy that went out is their employee. That's presumably not just some low-level employee. I mean, and he goes out there, and he has access, and he downloads all the material, looks at everything. I mean, I assume he could take pictures. I don't know what he did, but they were out there for a while, and he had access to do whatever he wanted, and then that material can be – I don't suggest – listen, I understand. I'd rather have the car. If we had the car, we wouldn't be talking about that. And her testimony is what it is, and, you know. Well, maybe if it goes back, you just throw out expert opinions and have your client testify and see where the jury comes out. We did that under Nevada law, Stachowicz. You don't even need an expert. It's a possibility. But it's – All right. Thank you. I would like to – mediation is something I would really be happy to have. Perhaps we ought to talk to each other. We don't force people to mediate if they don't want to. What we'll do is we'll hold this case in abeyance for a week for the parties to decide if you want to mediate. If we hear from you within a week that you agree to mediate, we'll do an order for mediation. If we don't hear from you within a week that you want to mediate, we'll decide the case. That's fair. Thank you very much. All right. Thank you to both counsel for your argument. Submission of this case is deferred for one week for the parties to explore mediation. It will be submitted one week from today for decision.
judges: Tashima, Rawlinson, Cjj Hatter (C. Cal.), Dj